### WILLIAM D. CLEVELAND & Co. v. JOHN F. CARR ET AL.

#### Decided June 8, 1899.

1. **Guaranty—Fraud—Misapplication—Estoppel.**

   Where guarantors of notes secured by trust deed purposely obtain the maker's money and apply it to a debt of his partner due themselves, without his consent and without any subsequent ratification by him, and afterwards they become assignees of the notes and trust deed, they are not entitled to recover on them or to have foreclosure.

2. **Same—Fraud Preventing Relief—Title.**

   Where guarantors of notes secured by trust deed, acting through an agent, purchased the property at a sale by the trustee, the agent taking the deed in his own name and afterwards conveying to them, it was proper for the court, in an action by the makers of the notes to recover the land, and upon proof by them that the guarantors received the money due on the notes and wrongfully converted it, to instruct that no title passed by virtue of such conveyance to the guarantors.

APPEAL from Polk.   Tried below before Hon. L. B. HIGHTOWER.

*Hill & Hill* and *Hutcheson, Campbell & Meyer*, for appellant.

*F. Campbell*, for appellees.

PLEASANTS, ASSOCIATE JUSTICE.—This is the second appeal in this suit to this court.   The former appeal and our decision therein are reported in 40 Southwestern Reporter, 407-411.   The pleadings in the case are very voluminous, consisting on the part of the appellee of original and supplemental petitions, and on part of appellants, exceptions general and special and general and special denials, plea in reconvention, and cross-bill.   The case, so far as necessary to be stated for the understanding of our disposition of the same, is succinctly this:   The appellee John F. Carr, some time in the early part of the year 1888, entered into an agreement with one D. S. Chandler, who was then engaged in the mercantile business in the town of Livingston, Polk County, to form a partnership under the firm name of Chandler & Carr, so soon as Carr could borrow a sufficient sum of money to be contributed by him as his proportion of the capital of said partnership, and for this purpose, in July, 1888, Carr and his wife, A. B. Carr (who died before the institution of this suit and whose heirs were made parties hereto by appellants), executed two deeds of trust on lands lying in Polk, Liberty, and San Jacinto counties to R. L. Brown to secure the payment of three promissory notes, executed by said John F. Carr to J. Gordon Brown, one for $4000 and two for $3000 each, each dated on the 13th of July, 1888, and

payable respectively November, 1891, November, 1892, and November, 1893, and each bearing interest at the rate of 9 per cent per annum and payable semi-annually. Said notes were also signed by D. S. Chandler and by Chandler & Carr, and were guaranteed by the appellants, a mercantile firm of Houston, Texas, and Messrs. Halff & Newbouer Bros., another mercantile firm of the city of Houston. The guaranty of these firms were not made on the notes but on a seperate instrument, the firm of Cleveland & Co. guaranteeing for $7027.44 and Halff & Newbouer Bros. guaranteeing the balance of the $10,000. The deed of trust authorized the trustee, R. L. Brown, upon default in payment of any of the installments of interest on his debt by Carr, to sell the lands at public auction in the county of Travis; and in April, 1892, for failure by Carr to pay interest on the notes, the lands situated in Polk County were sold in that county by Brown, the trustee, after advertising the sale as required by the deed of trust, and one David Russell became the purchaser for $7500. Russell was the agent for Cleveland & Co., and made the purchase under their direction for them. He gave his note for the purchase money to J. Gordon Brown, payable in 1893, which was indorsed by Cleveland & Co.; and Russell also executed a deed of trust upon the lands so purchased to R. L. Brown, to secure the payment of the said note. This note, when it fell due, was paid by a similar note indorsed as the other by Cleveland & Co., and secured by another deed of trust on the same land; and the amount due for the land by Cleveland & Co. was not actually paid to Brown till some time in 1897.

After the purchase by Russell, and after the execution of the deed of trust by R. L. Brown, he conveyed the land to Cleveland & Co. At the same time Cleveland & Co. purchased the lands in Polk County at the trustee's sale. They paid in cash to J. Gordon Brown the balance of the debt due him from Carr, which included necessarily that portion of the debt guaranteed by Halff & Newbouer Bros., and took from Brown an assignment of Carr's notes and of the deed of trust covering the lands situated in Liberty and San Jacinto counties; and in June, 1892, the trustee Brown having refused to make the sale and having declined to appoint a substitute trustee, and the deed of trust providing for the appointment of a substitute trustee by the payee or the holder of the notes, in case the original trustee should for any reason fail or refuse to execute the power of sale, the said David Russell, under appointment from Cleveland & Co., made sale at public auction in Liberty County to Cleveland & Co., for the sum of $750, of all the lands lying in said county of Liberty and the county of San Jacinto. And the deeds of trust further provided, that if any portion of said indebtedness remained unpaid for six months after maturity thereof, the payee or holder of said notes might have the lands mortgaged sold privately. Thus by the sales of the lands covered by both of the deeds of trust, and by the payment made in cash by Cleveland & Co. in 1892, the debt due Brown was discharged by Cleveland & Co. in April, 1892. The money borrowed by Carr from Brown was paid by the latter to Cleveland & Co. as the

agents of Chandler & Carr, and upon its receipt by them, Cleveland & Co. applied the whole of it, less a few hundred dollars expenses incurred by Carr in securing the loan, to a debt due them, and to a debt due to Halff & Newbouer Bros. from D. S. Chandler.

The firm of Chandler & Carr commenced business, after the loan was secured by Carr from Brown, and traded with Cleveland & Co., receiving monthly statements of their account from the latter firm until the 23d day of November, 1891, when it ceased to exist; and on said last day said Chandler & Carr made an assignment for the benefit of their creditors; and not until 1894, so far as appears from the record, did Carr call in question the validity of the sales of his lands under the deeds of trust executed by him and his wife to secure the money borrowed from Brown; but on April 5, 1894, he instituted this suit against Cleveland & Co. and David Russell to recover the lands bought by Cleveland & Co. at the sales made by the trustee Brown and the substitute trustee Russell; and also interest paid by him on said indebtedness to Brown, and to have the notes and mortgages executed by him, and also the deeds of conveyance executed by said trustees to Cleveland & Co. canceled; or in the alternative, that he recover of Cleveland & Co. the sum of money paid to them for him by J. Gordon Brown in July, 1888, with interest thereon. The basis of the suit being the invalidity of the trustee's sales, because of the fact that they were not made, as required by the deeds of trust, in the county of Travis, and the alleged willful, preconceived, and fraudulent conversion by Cleveland & Co. of the money received by them for plaintiff from J. Gordon Brown.

On the last trial of the cause, both parties having amended their pleadings after the reversal of the former judgment, the plaintiff, with the heirs of his deceased wife, recovered the lands sued for, and the appellants Cleveland & Co. recovered on their cross-bill against Carr & Chandler the sum of $5204.16, with interest thereon from May 28, 1898, at 9 per cent per annum, with a decree adjudging all of the lands embraced in said deeds of trust subject to the payment of said sum, and adjudging the costs equally against Carr & Chandler and Cleveland & Co., and the other parties to the suit were all dismissed with their costs; and new trial being refused them, Cleveland & Co. appealed and appellee filed cross-assignments of error.

On the former appeal of this case the court, speaking by Justice Williams, said: "Though we have held that plaintiff's cause of action for recovery of money is barred by limitation, it does not follow that his allegations of fraud, if established by proof, are ineffectual for any purpose. The sales made of his lands are void as held by the court below, and hence the money which he borrowed has not been paid except by the bids made for the land at the void sales. It is too plain for argument or citation of authority that the credits derived from the bids can not stand when the sale is declared void. So the deed of trust securing payment of the amount paid by Cleveland & Co. is outstanding against plaintiff's land. If his allegations are true, Cleveland & Co. defrauded him of

money for which the notes were given, and are now seeking to force him
to pay to them the amount called for by the notes. If this is true, cer-
tainly a court of equity will not lend its aid in the perpetration of such
a wrong. One of its favoriate maxims, 'He who comes into a court of
equity must come with clean hands,' would forbid any such consequences.
If Cleveland & Co., as alleged by plaintiff, signed the guaranty and ob-
tained the money for the preconceived purpose of applying it to Chand-
ler's debts, without plaintiff's knowledge or consent, they committed a
fraud upon plaintiff of which they can not, in our opinion, take advantage
to enforce any right accruing to them in the transaction. If they fraud-
ulently diverted and appropriated to their own use the money for which
the notes were given, and thus deprived plaintiff of its benefit, they did
no more than in equity and good conscience they should have done when
they paid the notes, and they have no just right to demand that plaintiff
reimburse them."

On the other hand, in the same opinion, it is said that an ordinary
conversion of the money by Cleveland & Co. would not cut them off from
recovering what they had paid on the notes. That is to say, if, as Cleve-
land & Co. claim, they applied the money to the payment of Chandler's
debt by direction of Chandler, he claiming to have and they believing
him to have authority from Carr to thus apply the money, such action
by them should not deny them any equitable relief to which the facts
show them entitled. In accordance with the law of the case, as an-
nounced in the above excerpts from the opinion announcing our decision
on the former appeal hereof, the appellee asked the court to instruct
the jury as follows: "If therefore you find from the evidence that
Cleveland & Co. did sign such guaranty and obtain Carr's money for
the preconceived purpose of applying said money to Chandler's debts to
themselves, and did apply said money to Chandler's debts to themselves
without Carr's knowledge or consent, and you further find that Carr had
not agreed to pay said debts, and further that at no time since the appli-
cation of said money, if you find it was so applied, that Carr had not rati-
fied its application in that way, then Cleveland & Co. can not recover
the amount of the notes executed by Carr to J. Gordon Brown, or fore-
close the trust deeds on his said lands, given to secure the payment of
said notes; and if you so find, you will find for the appellee, John F.
Carr."

The instruction was refused, and its refusal is assigned as error by
appellee, and we think the assignment is well taken; and although the
appellee by his brief expresses a willingness that the judgment of the
lower court may be affirmed, notwithstanding his cross-assignments of
error, we are of the opinion that the judgment should be reversed and
the cause remanded for another trial, that the vital and controlling
issue raised by the pleadings and the evidence may be determined by the
jury. The evidence is conflicting as to whether or not the appellants
are guilty of the unconscientious conduct with which they are charged
by appellee. If guilty they should not recover anything, unless possibly

the difference between the sum appropriated by them and the original debt due by Carr to Brown; but if guiltless, Carr should not recover any of the lands covered by the two mortgages or deeds of trust, notwithstanding the sales of said lands by the trustee and substitute trustee are null and void, unless he makes tender of all the moneys paid by Cleveland & Co. in discharge of his debt to Brown.

Appellants under their second assignment of error challenge the correctness of the charge of the court, to the effect that the private sales of the lands in controversy made by Russell on the 7th of March, 1898, to appellants were void and passed no title. Without meaning to be understood as denying the right of a party under any circumstances to sell by a trustee, pending a suit in which he is seeking a sale by judicial decree, we are not prepared to hold that the court erred, in view of the attitude of the appellants, under the charge preferred against them by the appellee. If that charge were established, no court would uphold the sale; and consequently we think such sale should not have been made and that the court did not err, for this reason, if not for others, in holding the sale unauthorized.

The questions presented by the other assignments of appellants were all, perhaps with one exception, decided on the former appeal adversely to appellants, and while our decision would doubtless have been otherwise but for the decision of the Supreme Court in the case of Faires v. Cockrell, 88 Texas, 428, we are not prepared to recede from our former ruling further than to say we think that the appellants, if not without standing in court by reason of the fraud charged by the appellee, are entitled to recover, upon the notes assigned them by Brown, so much of the debt due from Carr to Brown as was guaranteed by Messrs. Halff & Newbouer Bros., with interest on the same at the rate stipulated for by the notes, and also the attorney's fee contracted for in case of such suit, with decree of foreclosure of the mortgage liens upon the lands embraced in the two deeds of trust; and while the other portion of Carr's debt to Brown, guaranteed by Cleveland & Co., and by them paid in 1892, is barred, Carr, in case he fails to establish the charge of fraud, must pay said sum with legal interest before he can recover any of the lands covered by the two deeds of trust. Cleveland & Co.'s right to recover any portion of the moneys paid by them on Carr's indebtedness is dependent upon the finding of the jury upon the issue of fraud.

*Reversed and remanded.*