CROSBY et al. v. DI PALMA et al.

(Court of Civil Appeals of Texas. El Paso. Nov. 16, 1911. On Rehearing, Dec. 13, 1911.)

1. JUDGMENT (§ 142*)—DEFAULT—NEW TRIAL—GROUNDS—SERVICE BY PUBLICATION.

A defendant who actually appeared in a suit is not within Rev. St. 1895, art. 1375, giving to a party cited by publication the right to move for new trial within two years after judgment, though there was a subsequent issuance of citation and service thereof by publication on defendant.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 253; Dec. Dig. § 142.*]

2. DISMISSAL AND NONSUIT (§ 60*)—WANT OF PROSECUTION.

A delay of 10 years in the prosecution of an action after the death of the attorneys of the parties, during which time nothing evidencing an intention to prosecute was done except the filing of a motion to substitute for a lost petition, and the issuance and service of process thereon on some of the defendants, operates as a discontinuance notwithstanding Rev. St. 1895, art. 1279, providing that undisposed of cases are continued by operation of law.

[Ed. Note.—For other cases, see Dismissal and Nonsuit, Cent. Dig. §§ 140–152; Dec. Dig. § 60.*]

3. JUDGMENT (§ 418*)—ACTION TO SET ASIDE—GROUNDS—LOSS OF JURISDICTION.

A judgment rendered after the discontinuance of a cause for failure to prosecute may be attacked by action to set aside the judgment, the discontinuance depriving the court of jurisdiction.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 793; Dec. Dig. § 418.*]

4. JUDGMENT (§ 443*)—ACTION TO VACATE—GROUNDS—FRAUD.

A judgment by default in trespass to try title begun in 1887 was rendered in 1907. During the period there was no actual prosecution of the suit except the filing of a motion to substitute for a lost petition and issuance and service of process, of which a defendant had no notice and on which no order was entered until 1907, without notice of the resumption of the prosecution. The original attorneys had been dead for at least 10 years, and the defendant and his purchaser had been absent from the state for many years. The judgment was rendered without a legally substituted petition before the court as to defendant. Held, that the judgment was obtained by fraud against defendant and his purchaser, and they could sue in equity for relief against it.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 836; Dec. Dig. § 443.*]

5. PLEADING (§ 340*)—SUBSTITUTION OF PETITION—NOTICE—STATUTES.

Rev. St. 1895, art. 1458, providing that notice of motions in a suit pending is given by the filing of a motion and entry thereof in the motion docket during the term, is controlled by article 1498, providing for three days notice of motions to substitute for lost papers in a cause, and a defendant personally appearing in a cause is not chargeable with constructive notice of a motion alleging the loss of the original petiton and praying for a substituted petition, the notice contemplated referring to notice in some of the modes prescribed by law.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 1031; Dec. Dig. § 340.*]

6. JUDGMENT (§ 447*)—DEFAULT JUDGMENT—ACTION TO SET ASIDE—SUFFICIENCY OF DEFENSE.

A defendant suing to set aside a default judgment against him in trespass to try title need only reasonably show that the result would probably have been different had his defense been interposed, and proof that he had actual possession of the land for many years prior to the institution of the action established a prima facie defense, justifying the relief and relegating the parties to their original status

of plaintiff and defendant, with the burden of proof resting on plaintiff to establish his case, and leaving defendant the right to rely merely on the weakness of plaintiff's case.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 849–851; Dec. Dig. § 447.*]

7. JUDGMENT (§ 436*)—DEFAULT JUDGMENT—NEGLIGENCE.

A defendant in trespass to try title employed an attorney who promised to look after the case. Defendant left the state three years later, during which time there had been no active prosecution. He relied on the promise of his attorney, and for 17 years thereafter no active prosecution of the case was had. *Held,* that defendant was not guilty of negligence, but he could sue to vacate the default judgment rendered against him.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 823–826; Dec. Dig. § 436.*]

8. TRESPASS TO TRY TITLE (§ 33*)—PLEADING—CROSS-ACTION.

An answer in trespass to try title consisting of a general demurrer, plea of not guilty, limitations, and suggestion of valuable improvements made in good faith, and praying for a decree quieting title in defendant or for the value of improvements, is not a cross-action for affirmative relief.

[Ed. Note.—For other cases, see Trespass to Try Title, Dec. Dig. § 33.*]

9. DISMISSAL AND NONSUIT (§ 60*)—DUTY TO PROSECUTE.

A defendant who does not present a cross-action with prayer for affirmative relief need not give any attention to the case with a view of forcing a trial, but he may remain passive, and he may rely on plaintiff's failure to prosecute as a discontinuance of the action.

[Ed. Note.—For other cases, see Dismissal and Nonsuit, Cent. Dig. §§ 140–152; Dec. Dig. § 60.*]

On Rehearing.

10. APPEAL AND ERROR (§ 854*)—QUESTIONS REVIEWABLE.

Where the question on appeal involved the correctness of the action of the trial court in giving a peremptory instruction, questions involving the correctness of the trial court's filed conclusions of law and fact would not be considered, the statute contemplating the filing of such conclusions only in cases tried by the court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3402; Dec. Dig. § 854.*]

Appeal from District Court, El Paso County; J. F. Woodson, Special Judge.

Action by Richard Di Palma and another against Josephine Crosby and others to vacate a judgment. From a judgment for plaintiffs, defendants appeal. Affirmed.

D. Storms, F. G. Morris, and Stanton & Weeks, for appellants. M. Nagle and McBroom & Scott, for appellees.

HIGGINS, J. On July 28, 1887, Josiah F. Crosby, Bennett H. Davis, Charles Davis, Juan M. Ochoa, and William W. Williams filed suit in trespass to try title in district court of El Paso county against Richard Di Palma and about 30 other defendants for recovery of the Ascarate grant of land in said county, numbered 832 on docket of said court. The Ascarate grant conflicted with certain lands claimed by Di Palma in the Ysleta grant. The Di Palma lands consisted of 119 acres in the Rio Grande valley, known as tracts 1 to 6, and certain other tracts known as hill numbers, amounting to about 133 acres. Bennett H. Davis, one of the plaintiffs, was the attorney for plaintiffs, and Di Palma and some of the other defendants employed J. P. Hague to represent them. Davis and Hague were both residents of the city of El Paso. An answer was filed for Di Palma by his attorney in 1887, the exact nature of which is not disclosed, and on October 7, 1889, another answer was filed for him signed by Hague & Barnhart, attorneys. This answer did not purport to be an amendment, but was indorsed as an original answer and consisted of a general demurrer, plea of not guilty, limitation of three, five and ten years, suggestion of valuable improvements made in good faith, concluding with prayer as follows: "Wherefore, defendant prays that plaintiffs take nothing by this suit, that defendant be awarded a decree forever quieting him in his title to said land and property; but, if plaintiffs should recover of defendants any part of said property or premises, then this defendant prays judgment for the value of said improvements on said property, and for general, special, and equitable relief and for costs of suit." Demand for jury was made by defendants, and cause placed upon jury docket, where it was carried by the clerk until the rendition of final judgment, which was entered June 23, 1909, the validity of which judgment is attacked in the present case. B. H. Davis died in May, 1897, and Hague died about 1895. Orders of continuance in cause 832 were made in February and July, 1888, and no other orders or proceedings therein were had until May 21, 1900, when a motion was filed in behalf of plaintiffs alleging that all of the papers in the cause had been lost, and praying that the original petition be substituted, a certified copy thereof being attached. Notice thereof was served upon certain of the defendants in El Paso county, but no notice of any kind was served upon Di Palma. No order of substitution upon said motion was made at that time, nor any other order or proceeding of any kind was had in said cause until 1907, when the prosecution thereof was actively resumed by the plaintiffs, numerous suggestions of deaths being made, new parties being made, and many other proceedings and orders had therein, terminating in said judgment for the plaintiffs (appellants here) for a portion of the land involved, including that of Di Palma. On November 11, 1907, an order was entered substituting plaintiffs' original petition based on foregoing motion to substitute filed in 1900. In 1908 an amended supplemental petition was filed, alleging that the original petition had not been substituted as to some of the defendants,

and praying that it be now substituted as to them. In this petition Di Palma was alleged to be a resident of the city of Albuquerque, territory of New Mexico. Service of this as to Di Palma and numerous other defendants was had by publication, as in the case of an original petition. This amended supplemental petition merely prays for substitution of the petition and certain other papers therein named, and for general relief, but no order of substitution based thereon was made, and plaintiffs evidently treated same as sufficient upon which to base a judgment, as an attorney was appointed to defend the suit for the defendants therein named who were cited by publication, among them being Di Palma. At time of rendition of judgment there were 15 plaintiffs and 157 defendants, these additional parties having been brought into the suit upon suggestions of death, marriage, etc.

It appears that in El Paso county there is a bar committee which has control of the setting of cases, and that their action in these matters is usually acquiesced in and observed by the courts. Attorneys desiring to continue cases could do so through the medium of this committee. Plaintiffs' attorney, Davis, was chairman of this committee, and it is inferable from the evidence that the cause was continued from time to time up until death of Hague at the instance of Hague. At the time of the institution of the suit Di Palma and those under whom he claimed for many years had been in actual possession of portions of the land in controversy and had the same in a state of cultivation, and this continued up until the rendition of the judgment. Di Palma was a Catholic priest, holding the land in trust for the "Society of Jesus." He left the state in June, 1890, and since that date has resided in Colorado and New Mexico. On October 12, 1890, he conveyed the land ·to Joseph Marra, a Catholic priest, and who likewise holds same in trust for the "Society of Jesus." Di Palma testified that he employed Hague to defend the suit for him; that, when he left El Paso county, he went to Hague's office, and told him he was going away, and desired to be kept informed of anything done in the case, and his attorney promised to keep him posted on all changes, issues, and steps taken in his suit. He learned of Mr. Hague's death in 1909. He thinks he left all of his papers pertaining to the case in his attorney's hands. Marra knew about the suit at the time he conveyed the land to him. Marra asked him about the suit, and "I told him I would look after that. I never heard a word from Hague about this suit after I left here. Never wrote him, because I was expecting him to write me. I told him he could ascertain my whereabouts by inquiring of any of the Fathers here. I relied on Hague's promise to notify me if I was needed. It also appears from the testimony of Di Palma that Marra

had been abroad for seven or eight years after the land was conveyed to him and away from the land most of the time. It also appears that during the entire pendency of cause 832 the valley land had been in actual possession of the associate priests of Di Palma and Marra, and in cultivation. With reference to the loss of the papers in 832, it appears from receipt in clerk's office that they were last in possession of Hague and Barnhart. When the priests in charge of the land learned of the judgment rendered in 832, the answer of Di Palma filed October 7, 1889, was found in possession of one of them, and was delivered to Mr. McBroom, one of the attorneys for plaintiffs in the present case.

After adjournment of the term of court in which the judgment was rendered, an abstracter informed one of the associate priests of Di Palma and Marra of said judgment, and in the early part of 1910 the present suit was filed by Di Palma and Marra against the plaintiffs in cause 832.

Without undertaking to state in detail the petition in the cause, it is sufficient to say that it was a suit to set aside the judgment in cause 832, based upon the following theories:

First. That the same as to Di Palma was based upon service of citation by publication and he was entitled to a new trial for good cause shown under article 1375, R. S. 1895.

Second. If he was not entitled to proceed under the provisions of said article, then the petition should be treated as a direct suit to set aside the judgment, and the same should be set aside, because (a) cause No. 832, by reason of inaction and failure to prosecute by plaintiffs, had been abandoned, whereby the cause had been discontinued and the court had lost jurisdiction, of the subject-matter and parties, so that no valid judgment could be rendered. (b) If the suit had not been discontinued, then the judgment should be set aside because Di Palma had a meritorious defense, and the judgment was rendered through fraud, accident, or mistake without negligence upon plaintiffs' part.

Upon trial of the cause before a jury, the court gave a peremptory instruction for plaintiffs, and judgment was rendered in their favor.

[1] Passing now to a consideration of the questions presented by this appeal, we are of the opinion that appellees were not entitled to the benefit of article 1375, giving to parties cited by publication the right to file a motion for new trial within two years after the rendition of the judgment. The recitals in the judgment in cause 832 as to service upon Di Palma are conflicting. It first recites that he had been personally served with citation, and had appeared by his attorney, James P. Hague. Thereafter it recites that he had been served with citation by publication, had made default, and an

attorney had been appointed to represent him. Even if we give controlling effect to the last recital, the undisputed fact nevertheless remains that he did, in fact, appear in the cause and this gave the court jurisdiction over his person, which was not affected by the subsequent issuance of citation and service thereof by publication; provided the cause had not been discontinued. We think, though, the direct attack upon the judgment was well taken, and, under the undisputed facts, the court properly instructed the jury to find for appellees.

[2] From statement of the case made, it will be noted that attorneys for both plaintiffs and defendants were dead in 1897. No action whatever was taken from 1887, to 1897, except entry of two orders of continuance in 1888, and certainly there was no active prosecution of the cause during this period of time. It may have been the two attorneys had the case in mind, and that this inaction did not operate as a discontinuance, but from 1897 until 1907 there was no order in the cause whatever, the same remained wholly passive, and nothing evidencing an intention to prosecute, except the filing of the motion in 1900 to substitute petition and the issuance and service of process thereon upon certain of the defendants then residing in El Paso county. Under the decisions in Beck v. Avondino, 20 Tex. Civ. App. 330, 50 S. W. 209, Punchard v. Delk, 77 Tex. 104, 13 S. W. 615, Flanagan v. Smith, 21 Tex. 493, Johnson v. Ward, 21 Tex. 475, and Penniman v. Tinsley (Civ. App.) 75 S. W. 367, we think it clear that, under the facts stated, it would be presumed that the cause had been abandoned and discontinued as a matter of law, and, if in law these facts did operate as a discontinuance, then the court lost jurisdiction of the subject-matter and parties, which could only be regained by the institution of a new suit. In Beck v. Avondino it was held a delay of five years in failing to prosecute would ordinarily be held to be an abandonment and to operate as a discontinuance. In Punchard v. Delk, a delay of 25 years was held to have the same effect, and the court said a much shorter delay would have warranted the same conclusion. In Flanagan v. Smith a delay of nearly five years in the justice court was held to have the same effect.

There is no merit in the contention of appellants that a discontinuance was prevented by article 1279, R. S., by the terms of which undisposed of cases are continued by operation of law. We do not see the applicability of the statute quoted to the question involved, and, besides, this statute had been enacted prior to the rendition of the decisions quoted.

[3] In the cases quoted, the point was raised upon appeals, and not by direct attack upon the judgment, but the direct question of discontinuance was decided, and, if there was a discontinuance, the point can be as well made in direct attack as by appeal, for the effect of a discontinuance is to deprive the court of its jurisdiction. It may be well here to also state that in reaching the conclusions expressed in this opinion the court has clearly in mind the fact that a different rule applies in cases of appeal or writ of error and in direct attack upon a judgment as to errors which are available. Many errors which would be available in the first instance would not be in the second.

[4] If it be conceded that cause 832 had not been discontinued so as to deprive the court of jurisdiction to render the judgment herein attacked, then we are of the further opinion that appellees brought themselves clearly within the rule which grants relief against a judgment obtained by fraud, unmixed with negligence upon their part, in a suit against which there was a good defense. The fact that the judgment was taken when there had been an intervening period of 20 years during which there appears to have been no active prosecution of the suit, except the filing of motion to substitute in 1900, of which appellees had no notice, and upon which no order was entered until 1907, no notice of the resumption of the prosecution; after the original attorneys had both been dead for at least 10 years; after Di Palma and his vendee had been absent from the state for many years, and the parties must reasonably have known that they had been lulled into a sense of security by the long period of time which had elapsed; the further fact that the judgment was rendered without any legally substituted petition before the court so far as Di Palma was concerned—these facts we think in law constituted such a fraud upon appellees as would entitle them to have the judgment set aside, provided they had a good defense, and were not negligent. We do not mean to imply that appellants, their attorneys, or the honorable court rendering said judgment were guilty of any active fraud or deception practiced upon appellees, but that the facts stated in law constituted such fraud as would invoke the aid of a court of equity to relieve against it.

[5] As to the substitution of petition, it is urged that Di Palma had constructive notice thereof by virtue of entry of motion upon the motion docket. Article 1458, R. S., provides that notice of motions in a suit pending is given by the filing of the motion and entry thereof in the motion docket during the term. This article, however, is controlled by article 1498, providing for three days notice of motions to substitute, and the notice contemplated refers to notice in some of the modes prescribed by law. Watson v. Miller, 69 Tex. 175, 5 S. W. 680. The judgment in cause 832 was rendered by default by court when, as we have seen, a jury was demanded by defendants, and the cause was on the jury docket. The failure to try cause before a jury is one of the fraudulent acts alleged by

appellees, but this is immaterial, if the judgment was otherwise rightfully rendered. As a matter of fact, Di Palma did not appear and was defaulting at time judgment was rendered, and he lost no substantial right because of the court's failure to impanel a jury and submit the case to it.

[6] It is strenuously urged that a good defense was not shown, and that appellees appear to have been negligent. That appellees did not show a good record title or a good limitation title, and that they must have affirmatively shown the result, would have been different had they been permitted to urge their defense. We apprehend, however, that this is not the rule. The writers, perhaps have not always been exact in their statement of the rule. It is sometimes stated that a good or a meritorious defense must be shown, but we think the correct statement of the rule is, and that the terms quoted mean only, that it is necessary to reasonably show the result would probably have been different. Owens v. Foley, 42 Tex. Civ. App. 49, 93 S. W. 1003; Plummer v. Power, 29 Tex. 6; Overton v. Blum, 50 Tex. 423; Johnson v. Templeton, 60 Tex. 238; Davis v. Chalfaut, 81 Cal. 627, 22 Pac. 972. When this is shown, the measure of the law is fulfilled, and the parties are then relegated to their original status of plaintiff and defendant, with the burden of proof resting upon the plaintiff to make his case, leaving the defendant the right, if he sees fit, to rely merely upon the weakness of his adversary's case. Appellees showed beyond question that as to portions of the land in controversy they had had actual possession thereof for many years prior to 1887, and certainly made a prima facie defense on question of limitation. It was not necessary for them to assume the burden of proving title as an original plaintiff, but, in order to set judgment aside, it was necessary only to show a prima facie title. The appellants offered no evidence of their own title except the judgment in controversy, and, when the requirements of the law were met by appellees so as to show as a matter of law that this judgment should be set aside, then the parties, as stated above, were relegated to their original status as plaintiff and defendant, and, plaintiffs there (appellants here) showing no title, verdict was properly instructed for appellees.

[7] From the testimony of Di Palma quoted it is clear he was guilty of no negligence. He did not leave the country until three years after the institution of the suit, during which time there was no active prosecution. He had employed an attorney who had promised to look after his interests and keep him advised and upon which he relied, and as a matter of fact for 17 years the cause had slumbered, and any reasonable man would have supposed it had been permanently abandoned. Under these circumstances, we do not think Di Palma's failure to make inquiry can be imputed to him as negligence.

[8] It is insisted that his answer constituted a cross-action and prayer for affirmative relief, and he was thereby charged with the duty of prosecuting his cross-action. The contention that it constituted a cross-action is based upon the language of the prayer quoted above. Such was not its legal effect. Free v. Burgess (Sup.) 133 S. W. 421; Wetsell v. Hopkins, 29 Tex. Civ. App. 218, 67 S. W. 1075; Hoodless v. Winter, 80 Tex. 638, 16 S. W. 427; Short v. Hepburn, 89 Tex. 622, 35 S. W. 1057.

[9] Being defendants, no duty rested upon appellees to give attention to the cause with view of forcing a trial, but they could remain entirely passive. Latta v. Wiley (Civ. App.) 92 S. W. 436.

Conceding, then, that the cause had not been discontinued, we therefore hold that appellees under the facts shown were entitled as a matter of law to have the judgment in 832 set aside upon the ground of fraud, that the result would probably have been different had they been permitted to urge their defenses, and that they were not guilty of negligence such as would bar such right.

By their fifteenth assignment of error appellants complain of the action of the court in peremptorily instructing the jury to find for appellees; their contention being that it was for the jury to determine whether the appellees were entitled to have the judgment in 832 set aside.

As we have seen, the only evidence of title offered by appellants was this judgment. It we are correct in our holding that cause 832 had been discontinued, then the judgment as a matter of law was properly set aside, and the parties relegated to their original status of plaintiffs and defendants, with the burden of proving title resting upon appellants. The judgment upon which their title rested having fallen, the court properly instructed for the defendants in cause 832, who are here as appellees. Under the other view of the case, the facts in regard to the alleged fraud and negligence are undisputed. The undisputed facts also show a prima facie defense of title by limitation in appellees, and that the result would probably have been different had they been permitted to urge the same. Under this theory of the case the instructed verdict was, therefore, proper.

The record and briefs in this case are most voluminous, requiring most tedious and exhaustive examination. Appellants present 53 assignments of error, all of which are overruled. It would serve no useful purpose, and protract this opinion to an unreasonable length, to discuss them in detail. Many of them are necessarily involved in and disposed of by the views herein expressed. They have all received the careful consideration demanded by the importance of the questions

raised by this appeal and by the great value of the subject-matter of the litigation.

Affirmed.

PETICOLAS, C. J., disqualified and not sitting.

### On Rehearing.

HIGGINS, J. [10] In deference to request of counsel for appellants, the trial court filed conclusions of law and fact, although the cause was tried before a jury, which rendered a verdict for appellees in accordance with a peremptory instruction. In their motion for rehearing appellants vigorously insist that this court erred in failing to sustain various assignments of error directed against the correctness of such conclusions of the trial court.

We attach no importance whatever to such conclusions, and regard them as surplusage wholly. The statute contemplates the filing of such statements in cases tried before the court. The question presented to this court is the correctness of the trial court's action in giving a peremptory instruction for appellees, and, if this action was proper, it is unimportant to determine whether the trial court predicated its action upon correct or incorrect conclusions of law and fact.

Motion for rehearing is overruled.