**CARR et al. v. CLEVELAND et al.**

No. 2737.

Court of Civil Appeals of Texas. Beaumont.
Oct. 25, 1935.

Rehearing Denied Oct. 30, 1935.

Clay Cooke, of Fort Worth, R. H. Jones, of Livingston, and G. C. Lowe, of Woodville, for appellant.

Baker, Botts, Andrews & Wharton and Wm. N. Bonner, all of Houston, for appellee.

O'QUINN, Justice.

This is an appeal from a judgment sustaining a general demurrer and certain special exceptions to the petition of appellants, who were plaintiffs below. The suit was originally instituted by John F. Carr in the district court of Polk county. on April 5, 1894, against William D. Cleveland & Co. and David Russell, seeking to recover certain lands described in his petition,. and the annulment of a deed of trust sale of said lands, and, in the alternative, to recover a money judgment against William D. Cleveland & Co. in the sum of $10,000.

In order to understand the nature of the suit, in all of its mutations, we give the following brief history of the litigation:

In July, 1888, John F. Carr and family resided in Polk county, Tex., and were engaged in farming. He owned certain tracts of land aggregating more than 6,000 acres, situated in Polk, Liberty, and San Jacinto counties. At that time, D. S. Chandler was engaged in the mercantile business in the town of Livingston in Polk county. Carr knew Chandler well and had had much business dealings with him. It was agreed between Chandler and Carr that Carr would enter into partnership with Chandler in said mercantile business and would pay in $10,000 in cash as his part of the capital in said business, but Carr not having the money on hand, arranged to borrow same through William D. Cleveland & Co. from J. Gordon Brown of Austin, Travis county, Tex. To this end, on July 13, 1888, Carr executed his three certain promissory notes aggregating $10,000, payable to said Brown, and on said date Carr and his wife executed two deeds of trust covering all of the lands to R. L. Brown, trustee, to secure the payment of said $10,000 loaned Carr by J. Gordon Brown. The notes were also signed by D. S. Chandler and by Chandler & Carr, and were guaranteed by said William D. Cleveland & Co., a mercantile firm of Houston, Tex., and Halff & Newbouer Bros., another mercantile firm of Houston. The guaranties of these firms were not made on the notes, but on a separate instrument; Cleveland & Co. guarantying for $7,027.44, and Halff & Newbouer Bros. for the balance of the $10,000. The deed of trust authorized the trustee, R. L. Brown, upon default by Carr to sell the lands at public auction in Travis county, Tex. In April, 1892, Carr defaulted in the payment of interest, as stipulated in the notes and deed of trust, and the land in Polk county was sold in that county by the trustee under the deed of trust,

to David Russell, the agent of Cleveland & Co., for $7,500, who conveyed the land to Cleveland & Co., and said company paid in cash to J. Gordon Brown, the owner and holder of the notes, the balance of the debt due him by Carr, which included, necessarily, that portion of the debt guaranteed by Halff & Newbouer Bros., and took from Brown an assignment of Carr's notes and of the deeds of trust securing their payment. In June, 1892, the trustee, R. L. Brown, having refused to make sale of the lands in Liberty and San Jacinto counties, David Russell, under authority of the deed of trust, was appointed trustee by Cleveland & Co., the holder of the notes, and he sold the lands in Liberty and San Jacinto counties for $750; the title passing to Cleveland & Co. Thus, by the sales of the lands covered by the deeds of trust, and by the payment in cash by Cleveland & Co. in 1892, the debt due Brown by Carr was discharged by Cleveland & Co. in April, 1892. The money, $10,000, borrowed by Carr from Brown, was paid by Brown to Cleveland & Co., as the agents of Carr and the firm of Chandler & Carr; and upon its receipt Cleveland & Co. applied the whole of it, less a few hundred dollars expenses incurred by Carr in securing the loan, to a debt due them and to a debt due to Halff & Newbouer Bros. from D. S. Chandler. Carr was credited on the books of Chandler & Carr with the $10,000, and Chandler charged with said amount. The firm of Chandler & Carr commenced business after the loan was secured by Carr from Brown, and traded with Cleveland & Co., receiving monthly statements of their account with the latter firm, until November 23, 1891, when it ceased to exist, and on said date said Chandler & Carr made an assignment for the benefit of their creditors.

So far as we can determine from the record, Carr did not in any manner question the validity of the sales of the lands under the deeds of trust executed by him and his wife to secure the payment of the money he had borrowed from Brown, until April 5, 1894, when he instituted suit in the district court of Polk county against Cleveland & Co. and David Russell to recover the lands bought by Cleveland & Co. at the sales made by the trustees, and to have the notes and liens executed by him and the deeds of conveyance executed by said trustees to Cleveland & Co. canceled, or, in the alternative, to recover of Cleveland & Co. the sum of money paid to them for him by J. Gordon Brown in July, 1888, with interest thereon.

The basis of the above-mentioned suit was the invalidity of the trustee's sales of the lands because: (a) Such sales were not made, as required by the deeds of trust, in Travis county, Tex., but in Polk and Liberty counties where the lands were situated; and (b) the alleged willful, preconceived, and fraudulent conversion by Cleveland & Co. of the money received by them for him from J. Gordon Brown. Briefly, in substance, he alleged: That prior to July 13, 1888, D. S. Chandler was engaged in the mercantile business at Livingston, Polk county, and had proposed to him the formation of a partnership, Carr to pay in the sum of $10,000 cash as his part of the capital of the firm, but that he (Carr) did not have the money, and it was proposed that he procure said sum as a loan secured by a lien on his land—some 6,000 acres situated in Polk, Liberty, and San Jacinto counties. That Chandler was then insolvent, but that he believed Chandler to be solvent, and could not by investigation learn otherwise; that at Chandler's suggestion William D. Cleveland & Co. was requested to enable them to arrange for and secure the loan, and that Cleveland & Co., who knew Chandler's financial condition, and to whom Chandler owed a debt of more than $7,000, of which fact he (Carr) was ignorant, for the purpose of entrapping him into the formation of such partnership, and getting possession of the money which they proposed to borrow, to be applied to the settlement of said Cleveland & Co.'s claim against Chandler, fraudulently concealed Chandler's insolvent condition and his indebtedness to them from him, and represented to him that Chandler was solvent and that the proposed partnership would be advantageous to him (Carr) and urged and induced him to form such partnership; that said Cleveland & Co. told him that they could arrange with one J. Gordon Brown of Austin, Tex., to loan him the $10,000, he to secure the payment of same by executing deed of trust covering his said lands to which suggestion he agreed; that the notes for the loan of the money and the deed of trust upon his said lands securing the payment of the notes were placed in the hands of said Cleveland & Co., as his agents, to receive and pay over the money; and that upon said note and liens said company received the $10,000, and converted same to its own use by applying

said money to the payment of Chandler's indebtedness to it without his knowledge or consent. It was alleged that the contract of partnership had been signed with the condition that the partnership was to depend upon getting the money, and that the money never in fact came into the business; but it appears that in fact Carr and Chandler did become partners about July 13, 1888, and did engage in business under the firm name of Chandler & Carr until about November 23, 1891, when the firm failed and made an assignment for the benefit of their creditors. It was alleged that Carr then first learned of Chandler's financial condition, and also that he never learned of the disposition made of his money until within a few days prior to the filing of his suit. Facts were alleged in excuse of his failure to sooner make such discovery and to bring suit, but they need not be stated as no question was raised as to the sufficiency of the pleadings. It was further alleged that he paid the interest on the notes he had given to J. Gordon Brown for the borrowed money for some time, but that he made default in paying an installment, and because of this the notes matured, and the lands in Polk county were sold by the trustee, R. L. Brown, at the court house in Polk county, and not in Travis county as provided in the deed of trust, and that David Russell, agent for Cleveland & Co., purchased the land for $7,500 and conveyed same to Cleveland & Co.; that J. Gordon Brown transferred the notes and deed of trust to Cleveland & Co., and they appointed David Russell substitute trustee, and he sold the lands situated in Liberty county at the courthouse of said county, instead of in Travis county as was also provided in the deed of trust; and that Cleveland & Co. bought the land at said sale for $750. That all of these sales were void, and he prayed for the recovery of the lands, cancellation of the deed of trust and notes, and the recovery of damages because of the frauds alleged, and, in the alternative, for recovery of the money, $10,000, alleged to have been converted with interest.

Cleveland & Co. answered by general denial, and the pleas of two and four years' limitation. They also filed a plea in contravention in which they set up the execution and delivery of the notes and deed of trust by Carr to J. Gordon Brown in borrowing the money, the sale and purchase of the lands in Polk county by them, the assignment of the notes and deed of trust to them by Brown, and the subsequent sale of the other lands and the purchase thereof, as stated in the plaintiffs' petition. They further alleged that with Carr's knowledge, in order to induce Brown to lend the money to Carr, they (Cleveland & Co.) guaranteed the payment of the notes, and asserted the right to recover of Carr the amount of principal, interest, and attorneys' fees stipulated in the notes, both by virtue of the assignment of the notes and deed of trust to them, and by subrogation to the rights of Brown. They prayed that if the sales of the lands were held void, that they have judgment for the debt and foreclosure of the lien.

Carr's wife had joined him in the deed of trust, and as she had died, her heirs were made parties by the plea in contravention. The firm of Chandler & Carr had signed the notes as principals, and Chandler had also signed as an endorser, and he was also made a party, as was the assignee of the firm of Chandler & Carr. The pleadings were long and multiplied, but it is believed that we have given sufficient of their substance to an understanding of the issues involved.

The trial court instructed the jury that the sales of the lands were void, and directed it to find in favor of Cleveland & Co. for the amount due on the notes including interest and attorneys' fees, and for a foreclosure of the lien. Of the various claims for relief asserted by Carr, the court submitted only that which sought to recover for the conversion of the $10,000 with instructions as to the question of limitation pleaded by Cleveland & Co. against this claim. The jury returned a verdict in favor of Carr for $10,000 with interest, and in favor of Cleveland & Co. for the amount of the notes, and there being a balance in favor of the latter, judgment for it was rendered with foreclosure of the lien. From this judgment Cleveland & Co. appealed to the Galveston Court of Civil Appeals, and Carr made cross-assignments. That court held that Carr's action for conversion was barred by the two-year statute of limitations and practically held that under the facts shown, the allegations of fraud were not supported, but that the rights of the parties would depend upon the resolution of the conflict of the evidence as to the application of the money by Cleveland & Co. to the discharge of certain debts of Chandler, it being contended by Cleveland & Co. that Brown re-

fused to make the loan to Carr unless Cleveland & Co. and Halff & Newbouer Bros. would guarantee the notes, and that Chandler & Carr agreed that if such guaranty was given, when received, should be so applied, and that in accordance with this agreement the guaranty was executed. Carr denied any such agreement and denied any knowledge that such guaranty was given, and the court reversed and remanded the case to determine this issue, in connection with Carr's allegations of fraud relative thereto. Cleveland v. Carr (Tex. Civ. App.) 40 S. W. 406.

After the case was reversed, the parties repleaded, the substance of both pleadings being the same as in the first instance. Before the second trial Mrs. Carr died and her heirs (the children of Carr and wife) were made parties. On the second trial, Carr and the heirs recovered the lands sued for, and Cleveland & Co. recovered on their cross-bill against plaintiffs in the sum of $5,204.16 with 9 per cent. interest thereon from May 28, 1898, with a decree adjudging all of the lands embraced in the deeds of trust subject to the payment of said sum. Cleveland & Co. again appealed and Carr filed cross-assignments of error. On June 8, 1899, the judgment was reversed because of the failure of the court to properly submit the issue of fraud. · Cleveland v. Carr, 21 Tex. Civ. App. 406, 52 S. W. 1040.

After the second remanding of the cause, defendants Cleveland & Co. filed amended pleadings covering and enlarging their previous answers and cross-action. On December 11, 1900, F. Campbell, one of Carr's attorneys, by leave of the court, filed his plea of intervention, in which he alleged that for a valuable consideration he had purchased from John F. Carr all of his (Carr's) interest in and to the lands in litigation receiving from said Carr a deed to same, and, in so far as not inconsistent with his intervention plea, adopted the allegations in Carr's petition, denied all the allegations of Cleveland & Co. in their cross-action, and prayed for judgment for the lands. A copy of Carr's deed to Campbell was attached to the plea of intervention. It was dated December 13, 1899, conveyed the lands in controversy, and was filed for record December 11, 1900. John F. Carr, the original plaintiff, died on May 23, 1900.

Later, in December, 1900, the cause again coming on for trial, was tried to the court without a jury, and judgment rendered in favor of Cleveland & Co. for the land; the judgment reciting that Campbell had theretofore by deed duly acquired all the right, interest, and title of the original plaintiff Carr in and to the land in controversy; that all parties appeared and announced ready for trial; that the pleadings were read, and the evidence heard for and on behalf of Cleveland & Co. on their cross-bill and each and all of the other parties; and that the court fully understanding the premises, judgment was rendered, as stated, in favor of Cleveland & Co. for the title and possession of the land, fully describing same. To this judgment, no complaint of any character was made by any party.

On July 1, 1933, appellants, being the heirs of John F. Carr, filed motion to reopen the case alleging that it stood pending on the docket of the court undisposed of in that the judgment of December, 1900, was not final, and was void, and prayed that they be substituted as plaintiffs for the original plaintiff, John F. Carr, deceased, and that the successors in the interest of Cleveland & Co. be cited to appear and defend the suit. On July 8, 1933, they filed what they denominated "plaintiffs' petition," in which they stated the death of John F. Carr; that they were his legal heirs, and substantially pleaded the matters of fact as alleged by said John F. Carr in his pleadings, as their cause of action, naming many persons as defendants, as the successors in interest of Cleveland & Co., and prayed that they be cited to appear and defend. In their said petition they alleged that the judgment of December, 1900, was ineffective and void for many reasons which could not be stated. The parties named as defendants all appeared and some filed disclaimers; the others, the appellees herein, filed answer consisting of special exceptions, general demurrer, and general denial. January 29, 1934, on regular hearing the court sustained the general demurrer, and plaintiffs took leave to amend, and on April 10, 1934, filed what they called their "third amended original petition." This would have been the third amended original petition in the order of pleading in the original suit. In this appellants again stated that the original suit was undisposed of—still pending on the docket—and fully and substantially repleaded all of the matters of fact as contained in the original and amended petition, and prayed as before.

Appellees answered by general demurrer, special exceptions: (a) That the petition failed to state a cause of action for in that the cause had been tried and a final judgment entered in December, 1900, from which no appeal was taken, as shown by the records of the court of all of which the court would 'take judicial notice, wherefore the cause was not pending on the docket undisposed of; and (b) that if the judgment of December, 1900, was not a final judgment, and if said cause was left pending on the docket, that the failure of appellants, as the heirs and successors of the original plaintiff, John F. Carr, to prosecute the suit, and to have no further orders made therein, and their long-continued neglect and failure to take action for the purpose of reopening the cause and prosecuting same, shows that the original cause of action asserted in the instant action, if any, was abandoned and said suit discontinued as a matter of law, wherefore the court was without jurisdiction to enter further orders in same. (As exhibit, copy of the judgment of December, 1900, was attached to the answer.) They further answered by general denial.

June 4, 1934, the cause came on to be heard upon the pleadings of the parties, the court sustained the special exceptions and the general demurrer; the judgment containing the following recitals:

"The court, after hearing the pleadings and argument of counsel, and after taking judicial knowledge of all the previous orders, judgments and decrees entered in this cause, in the light of all of the pleadings of the parties, finds that the decree entered herein on the ——— day of December, 1900, which is of record in Book G, pages 502–509 of the Civil Minutes of the District Court of Polk County, was a final judgment and decree. The court is therefore of the opinion that the law is with the defendants:

"It is therefore ordered, adjudged and decreed that each of the special exceptions contained in the answer of W. T. Carter & Bro. et al. be and they are sustained, and that the general demurrer contained in said answer be and the same is also sustained, to which ruling of the court the plaintiffs then and there in open court duly excepted."

Appellants declining to further amend, the court dismissed their action. The case is here by appeal from that judgment.

The transcript is very long, containing more than 262 pages—all the pleadings, orders, and decrees reflected by the records of the district court from the inception of the case being embodied therein, as per the order of the trial court. Our statement of the case has been taken from the matters which we considered pleaded and without dispute, as well as in part from the statements found in the two reports of the case on two prior appeals, to wit, (Tex. Civ. App.) 40 S. W. 406, and 21 Tex. Civ. App. 406, 52 S. W. 1040.

Appellants present three assignments of error, complaining:

(a) That the court erred in sustaining the general demurrer because their "third amended original petition" stated a cause of action and the cause, therefore, should have been heard and determined on its merits.

(b) The court erred in "taking judicial knowledge of all the previous orders, judgments, and decrees in said cause, and upon such judicial knowledge sustaining said general demurrers thereto."

And (c) if, on hearing on a general demurrer, the court can take judicial knowledge of the facts (reflected by the record in the cause) contrary to the allegations of the petition demurred to, then the entire record incorporated in the transcript shows that the judgment of December, 1900, was not a final judgment, setting out several reasons for the contention.

■ The first and second assignments are, in substance, to the same effect; that is, that the court could not take judicial knowledge of the previous orders, judgments, and decree made and had in the case in passing upon a general demurrer to a later amended petition filed in the same case. Appellants' contention is based upon the well-settled rule that in passing upon a general demurrer, all matters of fact alleged in the petition must be taken as true. Such is the general rule, but there is an exception to this rule as well established as the rule itself, and that is that a demurrer does not admit alleged facts as true which the court will take judicial notice are not true. In other words, "the rule that, for the purpose of argument on the demurrer, verity is conceded to facts averred in the pleading demurred to, does not apply where the court has judicial knowledge to the contrary." 33 Tex. Jur. § 122, p. 557; 49 C. J. 440;

Snow v. Cook (Tex. Civ. App.) 278 S. W. 520.

But it is insisted that in passing upon demurrers, the court could not take judicial knowledge of the previous orders, judgments, and decrees made and had in the progress of the case, and upon such knowledge sustain the demurrers. This contention is without merit. That the court may do so is well settled. 17 Tex. Jur. § 27, p. 201; 15 R. C. L. § 44, p. 1113; Griffith v. Tipps (Tex. Civ. App.) 69 S.W.(2d) 846, 849; Custer v. Kroeger, 313 Mo. 130, 280 S. W. 1035, 44 A. L. R. 1328; Jones v. Chronister Lumber Co. (Tex. Civ. App.) 204 S. W. 704; Aetna Ins. Co. v. Dancer (Tex. Com. App.) 215 S. W. 962; First State Bank v. Jackson (Tex. Civ. App.) 13 S.W.(2d) 979. Appellants' petition stated that the case was still pending on the docket undisposed of, when the records of the court showed trial and final judgment in December, 1900. This conflict in facts pleaded by appellants, and the actual facts to the contrary shown by the prior order and judgment of the court, was properly taken notice of and considered by the court in sustaining the demurrer to the petition. The assignments are overruled.

The judgment of dismissal should be sustained for another reason. The suit had been pending, with several trials and two prior appeals, since April 5, 1894, down to December, 1900, when the case was again tried and final judgment rendered. No complaint of this judgment was made by any one, although Carr, the original plaintiff, had died and appellants, his heirs, were, or should have been, entirely familiar with the matters in contest, and of the judgment in December, 1900, until the motion of July 1, 1933, was made to reopen the case, and on July 8, 1933, they filed what they denominated their "third amended original petition." In the meantime various parties had acquired from Cleveland & Co., the party to whom the lands in controversy had been adjudged by the December, 1900, judgment, portions of the lands, and rights in and to same. All this time the deed from Carr to intervener Campbell transferring to Campbell all of his (Carr's) right, title, and interest in and to the lands in question, and the judgment awarding the lands to Cleveland & Co., were of record, upon the strength of which the parties bought of Cleveland & Co. the parts claimed and held by them. For more than thirty years the 1900 judgment had not in any manner by any one been questioned. Defendants W. T. Carter & Bro., and other defendants, specially demurred to appellants' petition, and asserted that if it could be said that the 1900 judgment was not a final one, that nevertheless by their long failure to take any action to further prosecute the suit, they had as a matter of law abandoned same, and should not at this late day be heard to revive or further prosecute same. This demurrer was by the court sustained, and appellants have not assigned error against this holding. However, aside from all other questions in this appeal, and in any event, we think that the court's sustaining the demurrer and dismissing the suit because appellants had abandoned their case was correct and therefore the judgment must be sustained. No complaint against the December, 1900, judgment having been made, and the judgment standing upon the record as a muniment of title in Cleveland & Co. without effort to disturb it, reasonably operated to induce the belief that appellants had acquiesced in same, and so others acquired from Cleveland & Co. rights in and to the lands with no thought of the suit still pending; and appellants remaining silent, making no effort to have further proceedings in the case for more than thirty years, undoubtedly worked an abandonment of their suit. Flanagan v. Smith, 21 Tex. 493 (4 years' delay); Crosby v. Di Palma (Tex. Civ. App.) 141 S. W. 321 (10 years' delay) (writ refused); Punchard v. Delk, 77 Tex. 104, 13 S. W. 615 (25 years' delay); Brooks Supply Co. v. Hardee (Tex. Civ. App.) 32 S.W.(2d) 384 (6 years' delay) (writ refused); Trahan v. Roberts (Tex. Civ. App.) 48 S. W.(2d) 503.

We believe that we have discussed and passed upon all the assignments and counter propositions presented that are necessary to a decision of the case, and therefore pretermit a discussion of the other matters presented bearing upon the judgment appealed from.

No error appearing, the judgment is affirmed.